UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARCUS L. WILLIS, <br>     Plaintiff, <br><br> V. <br><br> OFFICER DIAZ DE LEON, ET AL., <br>     Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 4:24-CV-778-P |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS

Pending before the Court is a Motion to Dismiss [doc. 33] filed on March 4, 2025, by Defendants City of Bedford, Officer Diaz De Leon ("De Leon"),[1] and Chief Jeff Williams ("Williams").[2] Having carefully considered the motion, and noting that Plaintiff wholly failed to file a response, the Court **FINDS** and **CONCLUDES** that Defendants' motion [doc. 33] should **GRANTED**.

### I. RELEVANT BACKGROUND

In his Second Amended Complaint [doc. 30],[3] *pro-se* Plaintiff Marcus L. Willis ("Willis") alleges that, on April 19, 2022, he "was stopped by Defendant Officer Diaz De Leon while driving in Bedford, Texas." (Pl.'s Sec. Am. Compl. at 2.) Plaintiff claims that "De Leon informed Plaintiff that he was stopped for allegedly driving without valid insurance." (*Id*.) Plaintiff further alleges:

---

[1] De Leon is a "police officer employed by the Bedford Police Department." (Plaintiff's Second Amended Complaint ("Pl.'s Sec. Am. Compl.") at 1.)

[2] Williams is the "former Chief of Police for the Bedford Police Department." (Pl.'s Sec. Am. Compl. at 1.)

[3] The Court notes that Plaintiff titled his Second Amended Complaint as "First Amended Complaint." However, as Plaintiff had already filed an original Complaint [doc. 1] and an Amended Complaint [doc. 9], the Court will refer to the most recently filed Complaint [doc. 30] as Plaintiff's Second Amended Complaint.

1

  10. Defendant De Leon then accused Plaintiff of possessing marijuana and proceeded to search Plaintiff's vehicle without consent, a warrant, or probable cause, in violation of the Fourth Amendment.

  11. No marijuana or contraband was found, yet De Leon issued a citation for driving without valid insurance, despite Plaintiff not knowing the car didn't have insurance.

  12. Plaintiff alleges that De Leon's actions were racially motivated, violating Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.

  13. Plaintiff subsequently filed a formal complaint with Defendant Chief Jeff Williams, reporting De Leon's unlawful search and racial profiling.

  14. Defendant Williams failed to take Plaintiff's complaint seriously, mocked him, and dismissed his concerns without a proper investigation, in violation of Plaintiff's due process rights.

  15. Williams also stated that Plaintiff "should consider a career as a car salesman", further demonstrating his disregard for Plaintiff's civil rights.

  16. Plaintiff alleges that Defendant Williams failed to train or supervise his officers on constitutional search and seizure procedures, leading to De Leon's misconduct.

  17. Defendant City of Bedford maintains a policy, custom, or practice of inadequate training or supervision, which has lead to repeated constitutional violations.

  18. As a result of Defendants' actions, Plaintiff has suffered emotional distress, reputational harm, and financial damages.

(Pl.'s Sec. Am. Compl. at 2.)

In his Second Amended Complaint, Plaintiff alleges the following claims: (1) a claim, pursuant to 42 U.S.C. § 1983,[4] against De Leon for violating Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States

---

[4]Willis seeks relief in this case under, *inter alia*, 42 U.S.C. § 1983 (*see* Pl.'s Sec. Am. Compl. at 2-3), which "creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman,* 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82 (1984)). "'Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates.'" *Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1997) (quoting *Johnson v. Harris Cty. Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir. 1989)). "'Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983.'" *Id*.

2

Constitution; (2) a claim, pursuant to 42 U.S.C. § 1983, against De Leon for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment; (3) a claim, pursuant to 42 U.S.C. § 1983, against Williams, for failing to properly train and supervise his officers; (4) a claim, pursuant to 42 U.S.C. §1983, against the City of Bedford for municipal liability; and (5) a claim under Texas law against all Defendants for intentional discrimination.  (Pl.'s Sec. Am. Compl. at 2-4.)

## II.  LEGAL STANDARD AND ANALYSIS

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) is generally viewed with disfavor.  *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  To defeat a motion to dismiss filed pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008) (internal quotation marks and citations omitted); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim satisfies the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

When ruling on a 12(b)(6) motion to dismiss, the court must accept all well-pled facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). While well-pled facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Additionally, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). Finally, although "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers,"[5] the pleadings must still show specific, well-pled facts, "not mere conclusory allegations" to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

In rendering a decision on a 12(b)(6) motion, the court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

### A.   Claims Against De Leon and Williams in their Official Capacities

To the extent, if any, that Plaintiff is suing Defendants De Leon and Williams in their official capacities, the Court **FINDS** and **CONCLUDES** that such claims should be dismissed as duplicative of the claims asserted against the City of Bedford. *See Chavez v. Alvarado*, 550 F. Supp. 3d 439, 450 (S.D. Tex. July 22, 2021) ("Because the plaintiffs are suing the City of Houston, their official-capacity claims against the individual officers are redundant and are dismissed); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Thus, Defendants' Motion to Dismiss on this issue should be **GRANTED**.

---

[5] *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).

B.      **Claim Against De Leon for Unreasonable Search and Seizure**

In his Second Amended Complaint, Plaintiff alleges that "Defendant De Leon conducted an unlawful vehicle search without probable cause consent, or a warrant, violating Plaintiff's Fourth Amendment Rights." (Pl.'s Sec. Am. Compl. at 2.)  De Leon, in the Defendants' Motion to Dismiss, argues that he is entitled to qualified immunity as Plaintiff has failed to "plead any specific facts which show that De Leon violated Plaintiff's constitutional rights" or that show that the conduct of De Leon was not objectively reasonable in light of clearly established law at the time of the events giving rise to the suit. (Defendants' Motion to Dismiss ("Defs.' Mot. to Dismiss") at 5.)

"The doctrine of qualified immunity protects government officials from suit and liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Byers v. Navarro Cty.*, No. 3:09-CV-1792-D, 2012 WL 677203, at *2 (N.D. Tex. Mar. 1, 2012) (citing *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) and *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  This is an affirmative defense that balances the important interests of holding "public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231. Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to negate the

5

defense once it is properly raised." *Cano v. Vickery*, No. H-16-392, 2018 WL 4567169, at *3 (S.D. Tex. Sept. 24, 2018).

    The Supreme Court has developed a two-step inquiry for resolving government officials' qualified immunity claims: (1) whether the facts that the plaintiff has **alleged** (at the motion-to-dismiss or motion for judgment on the pleadings stage) or **shown** (at the summary-judgment stage) make out a violation of a constitutional or statutory right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *see Byers*, 2012 WL 677203, at *2. Although the Supreme Court previously mandated that the two steps be resolved in sequence, in *Pearson v. Callahan,* it gave the lower courts permission to use discretion in deciding which of the two prongs to address first in light of the circumstances of the particular case. *Pearson,* 555 U.S. at 236 (rejecting the prior holding in *Saucier* that the analysis was a mandatory two-step sequence); *see also Lytle v. Bexar Cty., Tex.,* 560 F.3d 404, 409 (5th Cir. 2009). In conducting the inquiry under the first prong—whether the Plaintiff has alleged a violation of a constitutional right—the Court is to "employ currently applicable constitutional standards." *Kinney v. Weaver,* 367 F.3d 337, 350 (5th Cir. 2004) (en banc).

    In resolving the second prong--whether the right allegedly violated is "clearly established" --the contours of the right must be "clearly established" in a particularized sense to the context of the case, so that a reasonable official could be expected to understand that what he is doing violates that right.[6] *See Kinney*, 367 F.3d at 349-50 (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "The touchstone of this inquiry is whether a reasonable person would

---

[6] "This prong is comprised of two separate, but related, inquiries: "whether the allegedly violated constitutional rights were *clearly established at the time of the incident;* and, if so, whether the defendant's conduct was *objectively reasonable* in the light of that then clearly established law." *Backe v. City of Galveston, Tex*., No. 10-CV-388, 2014 WL 794025, at *4 (S.D. Tex. Feb. 27, 2014) (internal quotation marks and citations omitted) (emphasis in original).

have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."[7] *Goodson*, 202 F.3d at 736.

In this case, Plaintiff's Fourth Amendment unlawful search and seizure claim against De Leon arises out of De Leon stopping Plaintiff for allegedly driving without valid insurance. For Plaintiff to succeed against De Leon's assertion of qualified immunity, Plaintiff must, as set forth above, allege that (1) De Leon violated a statutory or constitutional rights and (2) the right was clearly established at the time of the alleged violation. *See id*.

Thus, the first issue is whether Plaintiff has alleged that De Leon violated one of Plaintiff's statutory or constitutional rights. "Unreasonable searches and seizures are prohibited by the Fourth Amendment." *Terrell v. Town of Woodworth*, No. 23-30510, 2024 WL 667690, at *8 (5th Cir. Feb. 19, 2024). In addition, traffic stops are seizures for the purpose of the Fourth Amendment. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)."[8] *Lopez–Moreno*, 420 F.3d at 430; *see Terrell*, 2024 WL 667690, at *8 ("This court analyze[s] the constitutionality of a traffic stop using the two-step inquiry set forth in *Terry v. Ohio*.") (internal quotation marks and citations omitted) (alterations in original).

Under the two-part *Terry* test, "[t]he court must evaluate (1) whether the officer's action was 'justified at its inception,' and (2) whether the officer's subsequent actions were 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Smith*, 506 F. App'x 319, 319 (5th Cir. 2013) (citing Lopez-Moreno, 420 F.3d at 430).

---

[7] "Objective reasonableness is a matter of law for the Court to decide." *See Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

[8] "'A *Terry* stop is a special category of Fourth Amendment seizures, in which an officer may briefly detain an individual for further investigation, if the officer has reasonable suspicion the individual is engaged in criminal activity.'" *Terrell*, 2024 WL 667690, at *8 (quoting *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023) (internal quotation marks and citations omitted)).

7

"At step one, we determine whether the stop was justified at its inception." *Terrell*, No. 2024 WL 667690, at *8. "As to the second prong, the 'detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, but if further reasonable suspicion emerges during the stop and is supported by articulable facts, detention may continue until the new reasonable suspicion has been dispelled or confirmed.'" *Brown v. City of New Orleans*, No. 16-17080, 2017 WL 897875, at *5 (E.D. La. Mar. 7, 2017) (quoting *United States v. Swan*, 259 F. App'x 656, 659 (5th Cir. 2007)). "Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inference from those facts, reasonably warrant the search and seizure." *Terrell*, 2024 WL 667690, at *9 (internal quotation marks and citation omitted).

As to prong one of the *Terry* test, based on Plaintiff's allegations, De Leon's action was justified at its inception as De Leon allegedly stopped Plaintiff for driving without valid insurance. *See United States v. Broca-Martinez*, 855 F.3d 675, 680 (5th Cir. 2017) ("A state computer database indication of insurance status may establish reasonable suspicion when the officer is familiar with the database and the system itself is reliable.") The Court next moves to prong two of the *Terry* test, which analyzes whether the officer's subsequent actions were "reasonably related in scope to the circumstances which justified the interference in the first place Plaintiff." *Smith*, 506 F. App'x at 319. In his Second Amended Complaint, Plaintiff alleges that De Leon, after stating that he was stopping Plaintiff for allegedly driving without valid insurance, accused Plaintiff of possession marijuana and then unlawfully searched Plaintiff's vehicle without probable cause, consent, or a warrant. (Pl.'s Sec. Am. Compl. at 2.)

However, it is well established precedent that "an officer's detection of the odor of marijuana coming from a vehicle is sufficient to support probable cause to search the vehicle, regardless of whether marijuana is ever found." *Terrell*, 2024 WL 667690, at *9. Consequently,

the Court **FINDS** and **CONCLUDES** that De Leon's stop and subsequent search of Plaintiff's vehicle did not violate Plaintiff's Fourth Amendment rights against unreasonable search and seizure. Thus, Defendants' Motion to Dismiss this claim should be **GRANTED** as De Leon is entitled to qualified immunity as Plaintiff has not alleged a statutory or constitutional violation.[9]

### C. Claim of Racial Discrimination Under the Equal Protection Clause against De Leon

In his Second Amended Complaint, Plaintiff also alleges that "Defendant De Leon's stop and search were racially motivated, violating the Equal Protection Clause." (Pl.'s Sec. Am. Compl. at 3.) Plaintiff further claims that the stop was based on "racial profiling" and intentional discrimination based on his race. (*Id*.) In their Motion to Dismiss, Defendants again claim that De Leon is entitled to qualified immunity as "Plaintiff alleges no specific facts that show the stop was racially motivated." (Defs.' Mot. to Dismiss at 5.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege either that (a) a state actor intentionally discriminated against [him] because of membership in a protected class[,] or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dept. of Ins.—Div. of Worker's Comp*., 700 F.3d 227, 238 (5th Cir. 2012) (internal quotation marks and citations omitted) (alterations in original). "Purposeful discrimination requires more than intent as volition or intent as awareness of consequences; it involves a

---

[9] Furthermore, even if Plaintiff had alleged a violation of a clearly established constitutional right, De Leon would still be entitled to qualified immunity as De Leon's conduct was not objectively unreasonable in light of clearly established law at the time of the events giving rise to the suit.

9

decisionmaker's undertaking a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 663 (internal quotation marks and citations omitted) (alterations in original); *see Cook v. City of Dallas*, No. 3:12-cv-03788-P, 2015 WL 7352121, at *5 (N.D. Tex. Aug. 23, 2015).

While Plaintiff alleges, as set forth above, that his rights under the Equal Protection Clause were violated, Plaintiff has not alleged any non-conclusory or non-speculative facts from which this Court can reasonably infer that De Leon intentionally discriminated against Plaintiff based on his race or treated De Leon differently from other individuals in similar situations because of his race. In other words, while Plaintiff alleges that he was stopped because of his race, he does not provide any specific facts that would enable the Court to infer that a discriminatory intent triggered his traffic stop. Consequently, the Court **FINDS** and **CONCLUDES** that Plaintiff has failed to state a claim under Equal Protection Clause Thus, Defendant's Motion to Dismiss this claim should **GRANTED**. *See, e.g.*, *Brown v. Preyor-Johnson*, No. 06-CA-1093 WWJ, 2008 WL 11417071, at *3-4 (W.D. Tex. Mar. 6, 2008); *Suggs v. Lowndes Cty. Sch. Dist.*, 804 F. Supp. 2d 510, 519 (N.D. Tex. Apr. 11, 2011) ("Vague and conclusory allegations of racial discrimination are insufficient to state a cognizable equal protection claim.").

### D. Claim Against Williams for Failure to Properly Train and Supervise His Officers

As to Plaintiff's claim against Williams, as the Chief of Police, for failure to train and supervise, Plaintiff alleges that "Williams knew or should have known of unconstitutional practices within the Bedford Police Department but failed to implement proper training or supervision" and that "Williams' failure to investigate Plaintiff's complaint shows deliberate disregard for civil rights violations." (Pl.'s Sec. Am. Compl. at 3.) As Plaintiff has not alleged that Williams was involved in the traffic stop, the section 1983 claim against De Leon is "the

gateway to all other section 1983 claims, for supervisors . . . cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual [state] officer, at least in suits for damages." *Waybright v. Frederick Cty., MD*, 528 F.3d 199, 203 (4th Cir. 2008); *see Kennedy v. City of Arlington, Tex.*, No. 4:24-CV-208-P, 2024 WL 5176870, at *9 (N.D. Tex. Oct. 16, 2024) (internal quotation marks and citations omitted) (alterations in original), *report and recommendation adopted*, 2025 WL 20434 (N.D. Tex. Jan. 2, 2025). Moreover, "[t]he Fifth Circuit has instructed that to hold a defendant supervisor liable on a theory of failure to train or supervise, the plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official[;] (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Jones v. Gooden*, No. 21-00372-BAJ-EWD, 2022 WL 944288, at *2 (M.D. La. Mar. 29, 2022). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such a lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). "A supervisory official is deliberately indifferent only when the inadequate training is so obvious that a constitutional violation would almost always result." *Stevenson v. LeBlanc*, No. 22-75-BAJ-RLB, 2022 WL 18776413, at *3 (M.D. La. Dec. 15, 2022).

In this case, Plaintiff, as set forth above, has not alleged a viable violation of his constitutional rights based on the conduct of De Leon during the traffic stop. Moreover, Plaintiff's allegations that Williams "mocked" Plaintiff or dismissed Plaintiff's concerns without a proper instigation are not constitutional violations. *See, e.g.*, *Morgan v. Barnett*, No. 7:09-cv-167-O, 2012 WL 1033507, at *5 (N.D. Tex. Mar. 22, 2012) (stating that "[t]hreats, verbal taunts, insults and even racial slurs, which may be viewed as offensive, do not give rise to liability under the Civil Rights Act."); *Taylor v. Cockrell*, No. 03-10933, 2004 WL 287339, at *1 (5th Cir.

2004) (stating that claims of failure to investigate grievances fall short of establishing a constitutional claim). In addition, Plaintiff has not alleged with specificity a pattern of similar violations such that inadequate training or supervision was so obvious that a constitutional violation would almost always result. *See*, *e.g.*, *Jones*, 2022 WL 944288, at *2 Consequently, the Court **FINDS and CONCLUDES** that Plaintiff has failed to state a claim for failure to train or supervise against Williams. Thus, Defendants' Motion to Dismiss on this issue should be **GRANTED**.

### D.     Claim for Municipal Liability Against City of Bedford

In his Second Amended Complaint, Plaintiff further alleges that the "City of Bedford has a pattern or practice of failing to train and supervise officers on constitutional stop-and-search procedures" and that the "City's failure to discipline officers for unconstitutional conduct demonstrates a policy of deliberate indifference." (Pl.'s Sec. Am. Compl. at 3.) Just as with supervisors, the section 1983 claim against De Leon is "the gateway to all other section 1983 claims, for . . . municipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual [state] officer, at least in suits for damages." *Waybright*, 528 F.3d at 203 (internal quotation marks and citations omitted) (alterations in original); *see Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 356 (M.D. La. Mar. 25, 2022) ("The Supreme Court has explained that a municipality cannot be liable [i]f a person has suffered no constitutional injury at the hands of the individual police officer.") (internal quotation marks and citations omitted) (alterations in original); *Blair v. City of Dallas*, 666 F. App'x 337, 342 (5th Cir. 2016) (stating that there cannot be municipal liability under section 1983 without an underlying constitutional violation). Moreover, municipal liability under section 1983 requires proof of (1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights

whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Because the Court has found and concluded, *supra*, that the none of the actions of De Leon violated Plaintiff's constitutional rights, De Leon's conduct cannot form the basis of a section 1983 liability claim against the City. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that, because a jury had found that an officer had not violated the victim's constitutional rights, there was no basis for municipal liability); *Ross v. City of Dallas*, No. 3:20-CV-1690-E, 2023 WL 2753988, at *6 (N.D. Tex. Mar. 31, 2023). Consequently, the Court **FINDS** and **CONCLUDES** that the claim against the City of Bedford should be **DISMISSED**. Thus, Defendants' Motion to Dismiss on this issue should be **GRANTED**.

### E. Claim Under Texas Law for Intentional Discrimination Against All Defendants

Plaintiff also brings a claim against all Defendants for intentional discrimination under Texas law. (Pl.'s Sec. Am. Compl. at 3.) While Plaintiff states that the "Texas Tort Claims Act (TTCA) does not bar claims based on civil rights violation," Plaintiff does not reference a specific state statute that his claim for intentional discrimination falls under. (Pl.'s Sec. Am. Compl. at 3-4.) Contrary to Plaintiff's assertions, Plaintiff cannot state a claim under the TTCA[10] against Defendant City of Bedford based on intentional torts. *See Fobbs v. Cunningham*, No. 1:05-CV-239-C, 2006 WL 8436795, at *2 (N.D. Tex. Mar. 28, 2006); *Chavez v. Alvarado*, 550 F. Supp. 3d, 439, 454 (S.D. Tex. 2021) ("The Texas Tort Claim Act does not waive immunity for claims arising out of intentional torts.") (internal quotation marks and citations omitted). Moreover, to the extent that Plaintiff is attempting to assert claims for intentional torts against the individual Defendants in their individual capacities, such claims

---

[10] "A Texas municipality may not be held liable for Texas common law causes of action unless the Texas legislature has waived its governmental immunity" and "[i]mmunity is only waived for claims brought under the TTCA." *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 872 (S.D. Tex. Apr. 9, 2014).

13

would also be barred pursuant to Texas Civil Practices and Remedies Code section 101.106. *See Chavez*, 550 F. Supp. 3d at 451.

### F. *Pro-se* Plaintiff and Leave to Amend

Generally, a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend unless it is apparent that Plaintiff has pled his best case. *See Ricks v. Khan*, No. 20-20303, 2025 WL 1201763, at *2 (5th Cir. Apr. 25, 2025); *Bazrowz v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008) ("While a precise definition of a plaintiff's 'best case' is elusive, this court often assumes a plaintiff asserts its best case after the plaintiff is 'apprised of the insufficiency' of the complaint."). In this case, the Court has already given Plaintiff two opportunities to amend his complaint [docs. 6, 28], with one opportunity being given after Defendants filed motions to dismiss notifying Plaintiff of the insufficiency of his complaint. Because Plaintiff has already amended his complaint twice [docs. 9, 30], the Court **FINDS** and **CONCLUDES** that Plaintiff has pled his best case.

## RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Defendants' Motion to Dismiss [doc. 33] be **GRANTED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed

findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **June 2, 2025**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 19, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE